1  Michael K. Brown (SBN 104252)
   Thomas J. Yoo (SBN 175118)
2  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
3  Los Angeles, CA 90071-1514
   Telephone:    213.457.8000
4  Facsimile:    213.457.8080
   Email: mkbrown@reedsmith.com
5  tyoo@reedsmith.com

6  Steven J. Boranian (SBN 174183)
   Alison B. Riddell (SBN 246120)
7  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
8  San Francisco, CA  94111-3922
   Telephone:    415.543.8700
9  Facsimile:    415.391.8269
   Email: sboranian@reedsmith.com
10 ariddell@reedsmith.com

11 Attorneys for Defendant
   Merck & Co., Inc.

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16 GEORGE WEST                        No.:

17                 Plaintiff,         (Removal from San Francisco Superior Court
                                      Case No. CGC-07-469085)
18        vs.
                                      **DEFENDANT MERCK & CO., INC.'S**
19 MERCK & COMPANY, INC., a corporation;   **NOTICE OF REMOVAL OF ACTION**
   MCKESSON CORPORATION, a corporation;    **UNDER 28 U.S.C. 1441(b)**
20 and DOES 1 to 100, inclusive,

21                 Defendants.

22

23

24

25

26

27

28

DOCSSFO-12499350.1-ABRIDDEL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLEASE TAKE NOTICE that defendant Merck & Co., Inc. ("Merck") hereby removes the state court action described below to this Court. Removal is warranted under 28 U.S.C. § 1441 because this is a diversity action over which this Court has original jurisdiction under 28 U.S.C. § 1332.

1.      On November 9, 2007, Plaintiff George West ("Plaintiff"), commenced this action entitled *West v. Merck & Co., Inc., et al.*, Case No. CGC-07-469085 ("the/this action") against Merck by filing a Complaint in San Francisco County Superior Court. A true and correct copy of Plaintiffs' Complaint is attached hereto as Exhibit "A."

2.      On December 10, 2007 Merck filed an Answer to the Complaint. A true and correct copy of the Answer filed in this action is attached hereto as Exhibit "B."

3.      No further proceedings have been had in this action.

4.      This action involves allegations regarding the prescription drug Vioxx. On February 16, 2005, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring 148 Vioxx-related cases to the United States District Court for the Eastern District of Louisiana for coordinated pretrial proceedings under 28 U.S.C. § 1407. Merck intends to seek the transfer of this action to that Multidistrict Litigation ("MDL"), *In re VIOXX Products Liability Litigation*, MDL No. 1657, and shortly will provide the JPML with notice of this action pursuant to the procedure for "tag along" actions set forth in the rules of the JPML.

5.      As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Merck has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

DOCSSFO-12499350.1-ABRIDDEL

DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.§ 1441(B)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**I.   MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL**

6.   Merck was served with this Complaint on November 16, 2007, less than thirty days ago. This Notice is therefore timely under 28 U.S.C. § 1446(b). *See* Exhibit "A."

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 84(a).

8.   All of the properly joined defendants consent to this removal.[1]

9.   No previous request has been made for the relief requested herein.

10.   Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiff's counsel, and a copy is being filed with the Clerk of the Court of the State of California, County of San Francisco.

**II.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441**

11.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

---

[1] The Complaint names McKesson as a Defendant. But because McKesson is fraudulently joined to this lawsuit, its consent to this removal is not required. *See* 28 U.S.C. § 1441(b); *see Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986) (co-defendants who are fraudulently joined need not join in a removal).

DOCSSFO-12499350.1-ABRIDDEL

DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**A.    The Amount In Controversy Requirement Is Satisfied**

12.    It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest.  Plaintiff alleges that he was injured as a result of ingesting of Vioxx.  *See* Exhibit "A" at ¶ 14.  Plaintiff seeks past and future general damages, past and future medical and incidental expenses, past and future loss of earnings and/or earning capacity, future medical monitoring costs, punitive and exemplary damages, prejudgment interest on all damages, past and future mental and emotional distress, past and future costs of suit, injunctive relief and disgorgement of profits.  *See* Exhibit "A" at pp. 16-17.

13.    Federal courts around the country have ruled that federal diversity jurisdiction exists in similar actions alleging personal injuries caused by Vioxx.  *See, e.g., Morgan v. Merck & Co., Inc.*, No. 3:03cv435WS (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co., Inc.*, No. L-03-134 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co., Inc.*, Civ. No. H-02-3139 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co., Inc.*, No. 02-C-4203 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co., Inc.*, No. 02-0196 (W.D. La. June 18, 2002); *Jones v. Merck & Co., Inc.*, Civ. No. 02-00186 (D. Haw. June 5, 2002).  These courts were all presented with complaints seeking actual damages for injuries allegedly caused by Vioxx and all found, either explicitly or implicitly, that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.

**B.    There Is Complete Diversity Of Citizenship**

14.    There is complete diversity as between Plaintiff and all of the named defendants.

15.    Merck is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 3 –

DOCSSFO-12499350.1-ABRIDDEL

16.     Merck is informed and believes that McKesson is a corporation organized under the laws of Delaware with its principal place of business at One Post Street, San Francisco, California, and therefore is a citizen of Delaware and California for the purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

17.     Plaintiff's complaint alleges that Plaintiff is a citizen of the State of South Carolina, and a resident of the County of Charleston.  *See* Exhibit "A" at ¶ 14.  Based on this allegation, Merck is informed and believes that Plaintiff is a citizen of the State of South Carolina.

18.     Defendant Does 1-100 have been sued under fictitious names.  For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a).

**C.     Local Defendant McKesson Is Fraudulently Joined**

19.     The only properly joined defendant, Merck, is not a citizen of California and removal is therefore proper under 28 U.S.C. § 1441(b).

20.     The Complaint names California resident McKesson Corporation as a defendant.  *See* Exhibit "A."  For the reasons set forth below, McKesson is fraudulently joined.  Therefore, its citizenship must be ignored for the purposes of determining removal jurisdiction.  *See McCabe v. General Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987).

21.     A defendant is fraudulently joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citations omitted).  *Accord United Computer Sys.*, 298 F.3d at 761; *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, ("In re PPA"), MDL No. 1407, Docket No. C02-423R, Slip. Op. at 3 (W.D. Wash. Nov. 27, 2002) (denying

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSSFO-12499350.1-ABRIDDEL

1    plaintiffs' motion to remand after finding resident retailer fraudulently joined).  The fraudulent

2    joinder of McKesson is obvious under well-settled state law because there is no legal basis for the

3    claims Plaintiff seeks to bring against this defendant as pleaded.

4

5    22.    The fraudulent joinder of McKesson is obvious under well-settled state law because

6    plaintiffs have failed to make any material allegations against it and there is no legal basis for the

7    claims as pleaded.  *See, e.g., Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137, (S.D. Cal. 1998)

8    (finding in-state defendants fraudulently joined where "no material allegations against [the in-state

9    defendants] are made"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL

10    809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent

11    joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual

12    allegations" against them).

13

14    23.    The crux of the Complaint is an alleged failure to adequately warn of alleged side

15    effects associated with the use of Vioxx, yet notably absent are any specific allegations that

16    McKesson made any specific representations or warranties to plaintiffs or plaintiffs' prescribing

17    physician, or that plaintiffs or plaintiffs' prescribing physicians relied on any such specific

18    representations or warranties by McKesson.  Accordingly, plaintiffs have failed to meet the minimal

19    pleading requirements to state a claim against McKesson.  *See, e.g., Taylor AG Industries v. Pure-*

20    *Gro*, 54 F.3d 555, 558 (9th Cir. 1995) (dismissing breach of express warranty claim against

21    distributor due to plaintiffs' failure to identify any statements made by the distributor that were

22    inconsistent with or went beyond either the product labels or the Product Guide provided by

23    manufacturer).  *See also Cox v. Depuy Motech, Inc.*, 2000 WL 1160486, at *5 (S.D. Cal. 2000)

24    (causation is an essential element of strict liability and negligence claims); *Keith v. Buchanan*, 173

25    Cal. App. 3d 13, 25 (1985) (actual reliance is an element of implied warranty claim); *B.L.M. v. Sabo*

26    *& Deitsch*, 55 Cal.App.4th 823, 834 (1997) (to state a claim of negligent misrepresentation, plaintiff

27    must at least identify the alleged misrepresentation).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

24.    Plaintiffs cannot cure this deficiency by simply relying on allegations directed toward "defendants." *See In re PPA*, MDL No. 1407, Slip Op. at 5 (allegations directed toward "defendants" or "all defendants" insufficient).

25.    The general allegation that Defendants knew of the alleged risks associated with the use of Vioxx are particularly deficient because the wholly conclusory claims are undermined and contradicted by the more specific allegations of Merck's concealment and misrepresentation of the same information. *See, e.g., In re PPA*, MDL 1407, Slip. Op. at 7 (allegations that "manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods . . . directly undermines and contradicts the idea that [the resident retail defendant] had knowledge or reason to know of alleged defects."). The allegations of Merck's purported concealment and misrepresentation of the alleged risks of Vioxx belie any inference that McKesson, a wholesale distributor, had knowledge of that which was allegedly concealed.

26.    Even if plaintiffs had directed allegations at McKesson, there remains no legal basis for the causes of action asserted against McKesson because plaintiff's claims are based on an alleged failure to warn and premised – for McKesson – on a non-existent duty to warn. Under California law, McKesson bears no duty to warn based on the "learned intermediary" doctrine. The "learned intermediary" doctrine, the foundation of prescription drug product liability law, provides that the duty to warn about a drug's risks runs from the manufacturer to the physician (the "learned intermediary"), and then from the physician to the patient. *See Brown v. Superior Court*, 44 Cal. 3d 1049, 1061-1062, n.9 (1988); *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996). It is the physician, and only the physician, who is charged with prescribing the appropriate drug and communicating the relevant risks to the patient. *See Brown*, 44 Cal.3d at 1061-62.

27.    The rationale of the "learned intermediary" doctrine is that it is the physician that is in the best position to determine whether a patient should take a prescription drug and that imposing a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 6 –

DOCSSFO-12499350.1-ABRIDDEL

1  duty on others to warn patients would threaten to undermine reliance on the physician's informed

2  judgment. For this reason, courts have rejected imposing liability on distributors like McKesson for

3  failure to warn of the risk of a prescribed drug. *See, e.g., Barlow v. Warner-Lambert Co.*, Case No.

4  CV 03 1647 R (RZx), slip op. at 2 (C.D. Cal. April 28, 2003) ("The Court finds that there is no

5  possibility that plaintiffs could prove a cause of action against McKesson, an entity which

6  distributed this FDA-approved medication [Rezulin] to pharmacists in California;" motion to remand

7  denied); *Skinner v. Warner-Lambert Co.*, Case No. CV 03 1643-R (RZx), slip op. at 2 (C.D. Cal.

8  April 28, 2003) (same); *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 680-81 (1985) (under

9  the learned intermediary doctrine, retail pharmacies can have no general duty to warn consumers of

10  effects of prescription drugs); *In re Baycol Prods. Litig.*, MDL No. 1431, Case No. 02-139, slip op.

11  at 3-4 (D. Minn. May 24, 2002) (retail distributor of prescription drugs fraudulently joined);

12  *Schaerrer v. Stewart's Plaza Pharmacy*, 79 P.3d 922, 929 (Utah 2003) (declining to extend duty to

13  warn to retail distributor of prescription diet drug as long as [their] "ability to distribute prescription

14  drugs is limited by the highly restricted FDA-regulated drug distribution system in this country . .

15  .").

16

17      28.    Moreover, it is undisputed that through a collaborative process, Merck and the FDA

18  prepared the information to be included with the prescription drug, Vioxx, with the FDA having the

19  final approval of the information that could be presented. Once the FDA has determined the form

20  and content of the information, it is a violation of federal law to augment the information. *See* 21

21  U.S.C. § 331(k) (prohibiting drug manufacturers and distributors from causing the "alteration,

22  mutilation, destruction, obliteration, or removal of the whole or any part of the labeling" of an FDA-

23  approved drug held for sale); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1069 n.12. (1988) (The

24  FDA regulates the testing, manufacturing, and marketing of drugs, including the content of their

25  warning labels.) Thus, McKesson could not change the information they were given by Merck as

26  approved by the FDA without violating federal law. No duty can be found where it requires a party

27  to violate the law to fulfill it.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    WHEREFORE, Defendant Merck respectfully removes this action from the Superior Court

2   of the State of California for the County of San Francisco, Case Number CGC-07-469085 to this

3   Court pursuant to 28 U.S.C. § 1441.

4

5        DATED:  December 11, 2007

6                                REED SMITH LLP

7

8                    By

9                                Alison B. Riddell
                                Attorneys for Defendant
                                Merck & Co., Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCSSFO-12499350.1-ABRIDDEL

DEFENDANT MERCK & CO., INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C.§ 1441(B)

**EXHIBIT "A"**

ENDORSED
F I L E D
San Francisco County Superior Court

NOV 8 2007

GORDON PARK-LI, Clerk
BY: CHRISTINA E. BAUTISTA
Deputy Clerk

WCS&R

NOV 19 2007

RECEIVED

CASE MANAGEMENT CONFERENCE SET

APR 1 1 2008 -9:00 AM

DEPARTMENT 212

1  William M. Audet (CA 117456)
2  Susanne N. Scovern (CA 161407)
   Joshua C. Ezrin (CA 220157)
3  AUDET & PARTNERS, LLP
   221 Main Street, Suite 1460
   San Francisco CA 94105
4  Telephone: 415.568.2555
   Facsimile: 415.568.2556
5
6  *Attorneys for Plaintiff*
7
8
9            SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                 FOR THE COUNTY OF SAN FRANCISCO
11
12 GEORGE WEST,                        )  Case No. CGC07- 469085
                                       )
13            Plaintiff(s),            )  **COMPLAINT FOR DAMAGES**
                                       )
14 vs.                                 )  1.   Strict Liability-Failure to Warn,
                                       )       Design Defect
15 MERCK & COMPANY, INC., a            )  2.   Negligence Per Se
   corporation; McKESSON              )  3.   Negligence
16 CORPORATION, a corporation; and     )  4.   Breach of Implied Warranty
   DOES 1 to 100, inclusive,          )  5.   Breach of Express Warranty
17                                     )  6.   Deceit by Concealment
            Defendants.               )  7.   Negligent Misrepresentation
18                                     )  8.   Violation of *Business and Professions*
                                       )       *Code* §17200
19                                     )  9.   Violation of *Business and Professions*
                                       )       *Code* §17500
20                                     )
                                       )  **DEMAND FOR A JURY TRIAL**
21
22                       **GENERAL ALLEGATIONS**
23        1.       This is an action for personal injuries and damages brought on behalf of the
24 Plaintiff who has been prescribed and supplied with, received, and who has taken and ingested
25 and consumed Vioxx, a pharmaceutical compound researched, designed, formulated,
26 compounded, tested, manufactured, produced, processed, assembled, inspected, distributed,
27 marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the
28 stream of interstate commerce by Defendant Merck & Company, Inc. This action seeks, among

                                      1
West.wpd

M00E515671

1    other relief, general and special damages and equitable relief in order to enable the Plaintiff to

2    treat and monitor the dangerous, severe and life threatening side effects caused by these drugs,

3    including but not limited to edema, changes in blood pressure, cardiovascular events,

4    cerebrovascular events and death.

5       2.      The true names or capacities whether individual, corporate or otherwise, of

6    Defendants Does 1 through 100, inclusive, are unknown to Plaintiff who therefore, pursuant to

7    *California Code of Civil Procedure* §474, sues said Defendants by such fictitious names.

8    Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is

9    in some manner legally responsible for the events and happenings herein referred to and caused

10    damages proximately and foreseeably to Plaintiff as alleged herein.

11       3.      At all times herein mentioned, each of the Defendants was the agent, servant,

12    partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants

13    herein and were at all times operating and acting within the purpose and scope of said agency,

14    service, employment, partnership, conspiracy and joint venture and rendered substantial

15    assistance and encouragement to the other Defendants, knowing that their conduct constituted a

16    breach of duty.

17       4.      There exists, and at all times herein mentioned, there existed, a unity of interest in

18    ownership between certain Defendants and other certain Defendants such that any individuality

19    and separateness between the certain Defendants has ceased and these Defendants are the alter

20    ego of the other certain Defendant, and exerted control over those Defendants. Adherence to the

21    fiction of the separate existence of these certain Defendants as any entity distinct from other

22    certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and

23    would promote injustice.

24       5.      The injuries to Plaintiff, were caused by the wrongful acts, omissions, and

25    fraudulent misrepresentations of Defendants, all of which occurred within the State of California.

26       6.      At all times herein mentioned, one or more of the corporate Defendants was, and

27    now is, a corporation doing business in the State of California.

28       7.      At all times herein mentioned, Plaintiff is informed and believes and thereon

**Complaint for Damages**

West.wpd

1   alleges one or more of the individual Defendants was, and is, a resident of the County of Los

2   Angeles, State of California.

3   　　　8.    At all times herein mentioned, Merck & Company, Inc., and the Doe Defendants 1

4   through 100, and each of them, were engaged in the business of, or were successors in interest to,

5   entities engaged in the business of research, designing, formulating, compounding, testing,

6   manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling,

7   promoting, packaging and/or advertising for sale or selling the drug Vioxx.

8   　　　9.    At all times herein mentioned, Merck & Company, Inc., and the Doe Defendants 1

9   through 100, and each of them, were authorized to do business within the State of California and

10  did in fact supply the aforementioned products within the State of California.

11  　　　10.    At all times herein mentioned, the officers and directors of Merck & Company,

12  Inc., and the Doe Defendants 1 through 100 named herein participated in, authorized and directed

13  the production and promotion of the aforementioned products when they knew, or with the

14  exercise of reasonable care should have known, of the hazards and dangerous propensities of said

15  products, and thereby actively participated in the tortious conduct which resulted in the physical

16  injuries described herein.

17  　　　11.    At all times herein mentioned, Doe Defendants, and each of them, were engaged

18  in the business of prescribing, formulating, distributing, supplying and or distributing Vioxx

19  　　　　　　　　　　**JURISDICTION AND VENUE**

20  　　　12.    The Court has personal jurisdiction over the Defendants because they are

21  authorized to do and doing business in the State of California.

22  　　　13.    Venue is proper in this county because approximately one thousand similar Vioxx

23  cases have, to date, been transferred to and added onto the Vioxx Coordination Proceeding,

24  JCCP 4247, in the Los Angeles County Central Civil West Courthouse.

25  　　　　　　　　　　　　**INJURED PLAINTIFF**

26  　　　14.    Plaintiff, George West, who resides in Charleston, South Carolina, took Vioxx

27  between September 5, 2003 and October 30, 2003. On October 26, 2003, and as a direct result of

28  his use of Vioxx, Mr. West suffered a CVA. Mr. West first learned of an association between

West.wpd

M00E5156I73

1    his injuries and Vioxx within one (1) year of the filing of this complaint.

2                                    **DEFENDANTS**

3        15.    Defendant McKesson Corporation and Doe Distributor Corporations is a

4    wholesale distributor of all Merck Products, including Vioxx, marketed, sold, and distributed

5    Vioxx which was ingested by the Plaintiff.

6        16.    Defendant Merck & Company, Inc., and Doe Defendants 1 to 100, manufactured,

7    marketed, sold and distributed Vioxx which was ingested by the Plaintiff.

8        17.    Defendant Merck & Company, Incorporated, and Does 1 to 100, is in the business

9    of researching, designing, formulating, compounding, testing, manufacturing, producing,

10    processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging

11    and/or advertising for sale Vioxx (Rofecoxib).

12        18.    Defendant Merck & Company, Inc., and Does 1 to 100, was and is an American

13    pharmaceutical company, incorporated under the laws of the State of New Jersey, whose

14    principal place of business is One Merck Drive, P. O. Box 100, Whitehouse Station, New Jersey

15    which at all times relevant manufactured and marketed, sold and distributed Vioxx for

16    Defendant.

17                                **FACTUAL ALLEGATIONS**

18        19.    At all times relevant, Defendants, and each of them, themselves, or by and

19    through the use of others, did manufacture, create, design, test, label, sterilize, distributed,

20    supply, prescribe, market, sell, advertise, warn, consult or failed to consult, and otherwise

21    distribute in interstate commerce and in the State of California the pharmaceutical product

22    known as Vioxx.

23        20.    Vioxx is the trade name of the generic drug Rofecoxib.  Vioxx was and is utilized,

24    prescribed, and sold by physicians for pain management and the relief of pain.  Vioxx has been

25    widely advertised and marketed by all named Defendants as a safe and effective pain relief

26    medication.

27        21.    Vioxx is a cyclooxygenase-2-specific inhibitor.  Vioxx is a non-steroidal

28    anti-inflammatory drug that exhibits anti-inflammatory, analgesic and antipyretic activities in

Complaint for Damages

West.wpd

M00E515674

1  animal models. The mechanism of action of Vioxx is believed to be due to inhibitors of

2  prostaglandin synthesis, via inhibition of cyclooxygenase-2 (Cox-2).

3       22.   Vioxx has been widely advertised by the Defendants as an effective pain reliever.

4       23.   Ibuprofen is a widely used drug to reduce pain and inflammation. It is estimated

5  that ibuprofen sales exceed $10 billion per year. A major side effect of Ibuprofen is

6  gastrointestinal in nature. Merck & Company, Inc., endeavored to develop a drug with pain

7  relieving and anti-inflammatory qualities that would not harm the user's stomach. Merck &

8  Company, Inc., developed, tested and obtained FDA approval for Vioxx, a Cox-2 inhibitor

9  designed to replace Ibuprofen.

10       24.   Defendant Merck & Co., Inc., made filing(s) with the United States Food and

11  Drug Administration in the United States.

12       25.   These drugs have been linked to several severe and life threatening medical

13  disorders including, but not limited to, edema, changes in blood pressure, heart attack, stroke,

14  seizures, kidney and liver damage, pregnancy complications and death.

15       26.   Evidence linking the subject drug formulations to significant edema, serious

16  cardiovascular events, and death has been noted and reported in a large study that was sponsored

17  by Merck & Company, Inc., in 2000. These known material risks were not disclosed to or shared

18  with Plaintiff by any Defendant.

19       27.   Defendants' strategy beginning in the 1990's has been to aggressively market and

20  sell these products by falsely misleading potential users about the products and by failing to

21  protect users from serious dangers which Defendant knew or should have known to result from

22  use of these products,

23       28.   Defendants widely and successfully marketed Vioxx in the United States, by

24  undertaking an advertising blitz extolling the virtues of Vioxx in order to induce widespread use

25  of the products. The marketing campaign consisted of advertisements, promotional literature to

26  be placed in the offices of doctors and other healthcare providers, and other promotional

27  materials provided to potential Vioxx users.

28       29.   The advertising program, as a whole, sought to create the image, impression and

**Complaint for Damages**

West.wpd

M00E6156775

1   belief by consumers and physicians that the use of Vioxx was safe for human use, had fewer side

2   effects and adverse reactions than other pain relief medications and would not interfere with daily

3   life, even though the Defendants knew these to be false, and even though the Defendants had no

4   reasonable grounds to believe them to be true.

5         30.     Defendants and each of them purposefully downplayed and understated the health

6   hazards and risks associated with Vioxx. Defendants, through promotional literature, deceived

7   potential users of Vioxx by relaying positive information, including testimonials from satisfied

8   users, and manipulating statistics to suggest widespread acceptability, while downplaying the

9   known adverse and serious health effects. Defendants concealed material, relevant information

10   from potential Vioxx users and minimized user and prescriber concern regarding the safety of

11   Vioxx.

12         31.     In particular, in the materials produced by Defendants, Defendants falsely

13   misrepresented the severity, frequency and nature of adverse health effects caused by Vioxx, and

14   falsely represented that adequate testing had been conducted concerning Vioxx.

15         32.     As a result of the Defendants' advertising and marketing efforts, and

16   representations concerning the subject products, the drugs are pervasively prescribed throughout

17   the United States.

18                   **FIRST CAUSE OF ACTION**

19          **(Strict Liability-Failure to Warn and Design Defect**
            **Defendant Merck & Company, Inc., McKesson Corporation;**

20                **Does 1 through 100, inclusive)**

21         33.     Plaintiff incorporates by reference Paragraphs 1 through 32 as though fully set

22   forth herein.

23         34.     The drug product previously described was defective at the time of its design,

24   manufacture, testing, production, inspection, endorsement, prescription, sale and distribution,

25   including lack of warnings or consumer information at the' time it was placed in the stream of

26   commerce, in that, and not by way of limitation, said product was defective in design and its

27   warnings, instructions and directions failed to warn of the dangerous propensities of said product,

28   which risks were known or reasonably scientifically knowable to Defendants. The Defendants,

West.wpd

M00E5I5676

1 and each of them, knew or should have known of the defective condition, characteristics and

2 risks associated with said product, as previously set forth herein.

3     35.  At all times herein mentioned, the aforementioned product was defective, and

4 Defendants, and each of them, knew that the product was to be used by the user without

5 inspection for defects therein. Moreover, Plaintiff neither knew, nor had reason to know at the

6 time of the use of the subject products, of the existence of the aforementioned defects.

7     36.  As a result of the defective condition of the aforementioned product, Plaintiff

8 suffered injuries and damages as alleged herein.

9

10                     **SECOND CAUSE OF ACTION**

11             **(Negligence - Defendant Merck & Company, Inc.;**
              **McKesson Corporation; Does 1 through 100, inclusive)**

12     37.  Plaintiff incorporates by reference Paragraphs 1 through 36 as though fully set

13 forth herein.

14     38.  At all times herein mentioned, Defendants, and each of them, had a duty to

15 properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect,

16 research , distribute, market, label, package, prepare for use, sell, prescribe, consult, and

17 adequately warn of the risks and dangers of the aforementioned product.

18     39.  At all times herein mentioned, Defendants, and each of them, negligently and

19 carelessly manufactured, designed, formulated, compounded, produced, processed, assembled,

20 inspected, distributed, marketed, labeled, packaged, consulted or failed to consult, prepared for

21 use and sold the aforementioned products and failed to adequately test and warn of the risks and

22 dangers of the aforementioned products.

23     40.  As a result of said negligence and carelessness of the defendants and each of

24 them, Plaintiff suffered injuries and damages as alleged herein.

25

26                     **THIRD CAUSE OF ACTION**

27         **(Negligence Per Se-Defendant Merck & Company, Inc.;**
              **McKesson Corporation; Does 1 through 100, inclusive)**

28     41.  Plaintiff incorporates by reference Paragraphs 1 through 40 as though fully set

**Complaint for Damages**

West.wpd

M00E51S677

1  forth herein.

2      42.    At all times herein mentioned, Defendants, and each of them, had an obligation

3  not to violate the law, in the manufacture, design, formulation, compounding, testing, production,

4  processing, assembly, inspection, research, distribution, marketing, labeling, packaging,

5  preparation for use, distributing, consulting, sale and warning of the risks and dangers of the

6  aforementioned products.

7      43.    At all times herein mentioned, Defendants, and each of them, violated the Federal

8  Food, Drug and Cosmetic Act, 21 U.S.C. Section 301, *et seq.*, related amendments and codes and

9  federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, California

10  *Health and Safety Code* Sections 110290, 110390, 110395, 110398, 110400 and 111330,

11  formerly Sections 26400, 26460, 26461, 26461.5, 26462, 26630 *et seq.*, and *California Civil*

12  *Code* Sections 1750, 1790, et seq., and regulations promulgated thereunder, and California *Code*

13  *of Regulations* 1707.2 and the California *Pharmaceutical Act, Business & Professions Code*

14  section 4052 (a)(7) and other applicable laws, statutes and regulations.

15      44.    Plaintiff, as purchaser and consumer of the products, is within the class of persons

16  the statutes and regulations described above are designed to protect, and Plaintiff's injuries are

17  the type of harm these statutes are designed to prevent.

18      45.    Defendants failed to meet the standard of care set by the following statutes and

19  regulations, which were intended for the benefit of individuals such as Plaintiff making

20  Defendants negligent per se:

21          a.      The labeling lacked adequate information on the use of Vioxx, even

22  though the Defendants were aware of the widespread use of the Vioxx.  [21 C.F.R. Section

23  201.56(a) and (d)]

24          b.      The labeling lacked adequate information on the approximate kind, degree

25  and duration of expected improvement, alone or in combination in violation of 21 C.F.R. Section

26  201.57(c)(3)(i).

27          c.      The labeling did not state that there was a lack of evidence to support the

28  common belief of the safety and advocacy of Vioxx [21 C.F.R. 201.57(c)(3)(i) and (iv) and

West.wpd

M00E5156/78

1  (c)(2)]

2          d.      The labeling failed to add warnings for serious cardiovascular events and

3  death as soon as there was reasonable evidence of their association with the drug. [21 C.F.R.

4  201.57(e).

5          e.      There was inadequate information for patients for the safe and effective

6  use of Defendants' drugs, in violation of 21 C.F.R. 201.57(f)(2).

7          f.      There was inadequate information regarding special care to be exercised

8  by the doctor for safe and effective use of Defendants' drugs in violation of 21 C.F.R.

9  201.57(f)(1).

10          g.      The labeling was misleading and promotion violation of 21 C.F.R.

11  201.56(b).

12          h.      The labeling was misleading in violation of *California Health and safety*

13  *Code* Sections 11130 and 110290.

14          i.      Defendants' advertising and representations regarding the subject drug

15  product were false and misleading in violation of *Health and Safety Code* Sections 110390 and

16  110290, and *Civil Code* Section 1770(a)(5).

17      46.      Defendants failed to consult with the plaintiff as required under the California

18  Business and Professions Code as well as the California Code of Regulation. As a result of the

19  violations of the statutes describe( above, Plaintiff suffered injuries and damages as alleged

20  herein.

21                          **FOURTH CAUSE OF ACTION**

22          **(Breach of Implied Warranty-Defendant Merck & Company, Inc.;**

23              **McKesson Corporation; Does 1 through 100, inclusive)**

24      47.      Plaintiff incorporates by reference Paragraphs 1 through 46 as though fully set

25  forth herein.

26      48.      Prior to the time that the aforementioned products were used by Plaintiff,

27  Defendants, and each of them impliedly warranted to Plaintiff and Plaintiff's agents and

28  physicians that said products were of merchantable quality and safe and fit for the use for which

West.wpd

M00ES15679

1   they were intended.

2       49.     Plaintiff was and is unskilled in the research, design and manufacture of the

3   aforementioned products and reasonably relied entirely on the skill, judgment and implied

4   warranty of the Defendants in using the aforementioned products.

5       50.     The aforementioned products were neither safe for their intended use nor of

6   merchantable quality, as warranted by Defendants, in that they had dangerous propensities when

7   put to their intended use and would cause severe injuries to the user.

8       51.     As a result of the aforementioned breach of implied warranties by the Defendants

9   and each of them, Plaintiff suffered injuries and damages as alleged herein.

10

11                          **FIFTH CAUSE OF ACTION**

12          **(Breach of Express Warranty-Defendant Merck & Company, Inc.;**
                  **McKesson Corporation; Does 1 through 100, inclusive)**

13      52.     Plaintiff incorporates by reference Paragraphs 1 through 51 as though fully set

14   forth herein.

15      53.     At all times herein mentioned, Defendants expressly warranted to Plaintiff and

16   Plaintiff's agents and physicians, by and through statements made by Defendants or their

17   authorized agents or sales representatives, orally and in publications, package inserts and other

18   written materials intended for physicians, medical patients and the general public, that the

19   aforementioned products were safe, effective, fit and proper for their intended use.

20      54.     In utilizing the aforementioned products, Plaintiff relied on the skill, judgment,

21   representations and foregoing express warranties of the Defendants, and each of them.  Said

22   warranties and representations were false in that the aforementioned products were not safe and

23   were unfit for the uses for which they were intended.

24      55.     As a result of the foregoing breach of express warranties by the Defendants, and

25   each of them, Plaintiff suffered injuries and damages as alleged herein.

26

27                          **SIXTH CAUSE OF ACTION**

28      **(Deceit by Concealment *Cal. Civ. Code* §1709-1710 - Defendant Merck & Company, Inc.;**
                  **McKesson Corporation; Does 1 through 100, inclusive)**

Complaint for Damages

West.wpd

MDES15680

56.    Plaintiff incorporates by reference Paragraphs 1 through 55 as though fully set forth herein.

57.    Defendants, and each of them, from the time that the aforementioned products were first manufactured, marketed and distributed, and up to the present, willfully deceived Plaintiff by concealing from the Plaintiff, Plaintiff's physicians and the general public, the true facts concerning said pharmaceutical products, which the Defendants, as manufacturers markers and distributors of the products, had a duty to disclose.

58.    As set forth above, Defendant Merck & Company, Inc., sponsored a large study which concluded that patients taking Vioxx had four times the risk of heart attacks and that the risk appears to increase over time.

59.    As set forth above, Defendant Merck & Co., Inc., received letters from the Department of Health and Human Services in December of 1999 stating that it had been determined that the promotional pieces utilized by Defendant Merck & Co., Inc., were false and misleading because they contained misrepresentations of Vioxx's safety profile, unsubstantiated comparative claims, and were lacking in fair balance.

60.    At all times herein mentioned, Defendants, and each of them, conducted a sales and marketing campaign to promote the sale of the aforementioned drug products and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences of the use of the aforementioned products. Defendants, and each of them, were aware of the foregoing, and that the aforementioned products were not safe, fit and effective for human consumption, the use of said products is hazardous to health, and said products have a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff.

61.    The Defendants intentionally concealed and suppressed the true facts concerning said pharmaceutical products with the intent to defraud Plaintiff, in that the Defendants knew that Plaintiff's physicians would not prescribe the subject products, and Plaintiff would not have used the subject products, if they were aware of the true facts concerning the dangers of said product.

62.    As a result of the foregoing fraudulent and deceitful conduct by the Defendants,

Complaint for Damages

West.wpd

M00E515881

1    and each of them, Plaintiff suffered injuries and damages as alleged herein.

2                              SEVENTH CAUSE OF ACTION

3
     (Negligent Misrepresentation - Defendant Merck & Company, Inc.;
4                 McKesson Corporation; Does 1 through 100, inclusive)

5        63.    Plaintiff incorporates by reference Paragraphs 1 through 62 as though fully set

6    forth herein.

7        64.    Defendants, and each of them, from the time that the aforementioned products

8    were first manufactured, marketed and distributed, and up to the present, made false

9    misrepresentations, as previously set forth herein, to Plaintiff, Plaintiff's physicians and the

10   general public, including but not limited to the misrepresentation that said pharmaceutical

11   product was safe, fit and effective for human consumption. At all times herein mentioned,

12   Defendants, and each of them, conducted a sales and marketing campaign to promote the sale of

13   the aforementioned drug products and willfully deceive Plaintiff, Plaintiff's physicians and the

14   general public as to the health risks and consequences of the use of the aforementioned products.

15       65.    The Defendants made the foregoing representation without any reasonable ground

16   for believing them to be true. These representations were made directly by Defendants, by sales

17   representatives and other authorized agents of said Defendants, and in publications and other

18   written materials directed to physicians, medical patients and the public, with the intention of

19   inducing reliance and the prescription, purchase and use of the subject products.

20       66.    The foregoing representations by the Defendants, and each of them, were in fact

21   false, in that the aforementioned products were not safe, fit and effective for human consumption,

22   the use of said products is hazardous to health, and said products have a serious propensity to

23   cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as

24   delineated herein.

25       67.    The foregoing representations by Defendants, and each of them, were made with

26   the intention of inducing reliance and the prescription, purchase and use of the subject products.

27       68.    In reliance on the misrepresentations by the Defendants, and each of them,

28   Plaintiff was induced to purchase and use the use of the aforementioned products. If Plaintiff had

Won.wpd

M00E5f5682

1   known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used

2   the subject products. The reliance of Plaintiff upon Defendants' misrepresentations was justified

3   because such misrepresentations were made and conducted by individuals and entities who were

4   in a position to know the true facts.

5        69.   As a result of the foregoing negligent misrepresentations by the Defendants, and

6   each of them, Plaintiff suffered injuries and damage as alleged herein.

7

8                            **EIGHT CAUSE OF ACTION**

    **(Violation of *Business & Professions Code* § 17200 - Defendant Merck & Company, Inc.;**

9                **McKesson Corporation; Does 1 through 100, inclusive)**

10      70.   Plaintiff incorporates by reference Paragraphs 1 through 69 as though fully set

11   forth herein.

12      71.   Plaintiff brings this cause of action pursuant to *Business & Professions Code*

13   §17204, in an individual capacity, and not on behalf of the general public.

14      72.   California *Business & Professions Code* § 17200 provides that unfair competition

15   shall mean and include "all unlawful, unfair or fraudulent business practices and unfair,

16   deceptive, untrue or misleading advertising.

17      73.   The acts and practices described in Paragraphs 1 through 68 above, were and are

18   likely to mislead the general public and therefore constitute unfair business practices within the

19   meaning of *Business and Professions Code* §17200. The acts of untrue and misleading

20   advertising set forth in presiding paragraphs are incorporated by reference and are, by definition,

21   violations of *Business & Professions Code* § 17200. This conduct includes, but is not limited to:

22           a.   Representing to Plaintiff, Plaintiff's physicians and the general public that

23   said pharmaceutical products were safe, fit and effective for human consumption, knowing that

24   said representations were false, and concealing from the Plaintiff, Plaintiff's physicians and the

25   general public that said products had a serious propensity to cause injuries to users;

26          b.   Engaging in advertising programs designed to create the image, impression

27   and belief by consumers, physicians that the use of Vioxx was safe for human use, had fewer side

28   effects and adverse reactions than other pain medication, constituted a convenient, safe form of

**Complaint for Damages**

West.wpd

1  pain relief and would not interfere with daily life, even though the Defendants knew these to be

2  false, and even though the Defendants had no reasonable grounds to believe them to be true;

3          c.    Purposely downplaying and understating the health hazards and risks

4  associated with Vioxx;

5          d.    Issuing promotional literature deceiving potential users of Vioxx by

6  relaying positive information, including testimonials from satisfied users, and manipulating

7  statistics to suggest widespread acceptability, while downplaying the known adverse and serious

8  health effects and concealing material relevant information regarding the safety of said products.

9        74.    The unlawful, unfair and fraudulent business practices of Defendants described

10  above present a continuing threat to members of the public in that Defendants continue to engage

11  in the conduct described therein.

12        75.    As a result of their conduct described above Defendants have been and will be

13  unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds

14  of millions of dollars in ill-gotten gains from the sale and prescription of said drugs in California,

15  sold in large part as a result of the acts and omissions described herein.

16        76.    Because of the fraudulent misrepresentations made by Defendants as detailed

17  above, and the inherently unfair practice of committing a fraud against the public by intentionally

18  misrepresenting and concealing material information, the acts of Defendants described herein

19  constitute unfair or fraudulent business practices.

20        77.    Plaintiff, pursuant to *California Business & Professions Code* § 17203, seeks an

21  order of this court compelling the Defendants to provide restitution, and to disgorge the monies

22  collected and profits realized by Defendants, and each of them, as a result of their unfair business

23  practices, and injunctive relief calling for Defendants, and each of them, to cease such unfair

24  business practices in the future.

25  **NINTH CAUSE OF ACTION**

26  **(Violation of *Business & Professions Code* § 17500 - Defendant Merck & Company, Inc.;**
      

27  **McKesson Corporation; Does 1 through 100, inclusive)**

28        78.    Plaintiff incorporates by reference Paragraphs 1 through 77 as though fully set

Complaint for Damages

West.wpd

M00E515684

1  forth herein.

2      79.    Plaintiff brings this cause of action pursuant to *Business & Professions Code*

3  § 17535, in an individual capacity and not on behalf of the general public.

4      80.    *California Business & Professions Code* § 17500 provides that it is unlawful for

5  any person, firm, corporation or association to dispose of property or perform services, or to

6  induce the public to enter into any obligation relating thereto, through the use of untrue or

7  misleading statements.

8      81.    At all times herein mentioned Defendants have committed acts of disseminating

9  untrue and misleading statements as defined by *Business & Professions Code* §17500 by

10  engaging in the following acts and practices with intent to induce members of the public to

11  purchase and use pain medication:

12          a.    Representing to Plaintiff, Plaintiff's physicians and the general public that

13  said pharmaceutical products were safe, fit and effective for human consumption, knowing that

14  said representations were false, and concealing from the Plaintiff, Plaintiff's physicians and the

15  general public that said products had a serious propensity to cause injuries to users;

16          b.    Engaging in advertising programs designed to create the image, impression

17  and belief by consumers and physicians that the use of Vioxx was safe for human use, had fewer

18  side effects and adverse reactions than other pain medication, constituted a convenient, safe form

19  of pain relief and would not interfere with daily life, even though the Defendants knew these to

20  be false, and even though the Defendants had no reasonable grounds to believe them to be true;

21          c.    Purposely downplaying and understating the health hazards and risks

22  associated with Vioxx;

23          d.    Issuing promotional literature deceiving potential users of Vioxx by

24  relaying positive information, including testimonials from satisfied users, and manipulating

25  statistics to suggest widespread acceptability, while downplaying the known adverse and serious

26  health effects and concealing material relevant information regarding the safety of said products.

27      82.    The foregoing practices constitute false and misleading advertising within the

28  meaning of *California Business & Professions Code* §17500.

**Complaint for Damages**

West.wpd

M00E515685

83.     The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

84.     As a result of their false and misleading statements described above, Defendants have been and will be unjustly enriched.  Specifically, Defendants have been unjustly enriched by hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Vioxx, sold in large part as a result of the false or misleading statements described herein.

85.     Pursuant to *California Business & Professions Code*, § 17535, Plaintiff seeks an order of this court compelling the Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendant, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants, and each of them, to cease such unfair business practices in the future.  Plaintiff seeks the imposition of a constructive trust over, and restitution and disgorgement of, monies collected and profits realized by Defendants, and each of them, to cease such false and misleading advertising in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For past and future general damages, according to proof;

2.     For past and future medical and incidental expenses, according to proof;

3.     For past and future loss of earnings and/or earning capacity, according to proof;

4.     For future medical monitoring costs, according to proof;

5.     For punitive and exemplary damages in an amount to be determined at trial;

6.     For prejudgment interest on all damages as is allowed by the laws of the State of California;

7.     For past and future mental and emotional distress, according to proof;

8.     For past and future costs of suit incurred herein;

9.     For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising.

Wcst.wpd

M00E515686

1    10.    For a disgorgement of profits, according to proof;

2    11.    For such other and further relief as the Court deems just and proper.

3                            **JURY DEMAND**

4    Plaintiff demands a trial by jury on all issues which may be tried by a jury.

5

6    Dated: November 9, 2007                        AUDET & PARTNERS, LLP

7

8                                            _____
                                                     Joshua C. Ezrin
9

10                                           William M. Audet
                                             Susanne N. Scovern
11                                           AUDET & PARTNERS, LLP
                                             221 Main Street, Suite 1460
12                                           San Francisco CA 94105
                                             Telephone: 415.568.2555
13                                           Facsimile: 415.568.2556

14                                           *Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

West.wpd

M0DE515687

11/6/07 @ 3:10p

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MERCK & COMPANY, INC., a corporation; McKESSON
CORPORATION, a corporation; and DOES 1 to 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GEORGE WEST,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Civic Center Courthouse<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | CASE NUMBER:<br>*(Número del Caso):*<br>CGC-07-469085 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William M. Audet (CA 117456), 221 Main Street, Ste. 1460, San Francisco, CA 94105

GORDON PARK-LI

| DATE:<br>*(Fecha)* NOV 9 2007 | Clerk, by CHRISTINA E. BAUTISTA<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Merck & Company, Inc.

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

M00E515688

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:
Joshua C. Ezrin (SBN 220157)
Audet & Partners, LLP
221 Main St. #1460
San Francisco, CA 94105
TELEPHONE NO.: (415) 568-2555    FAX NO.: (415) 568-2556
ATTORNEY FOR *(Name)*: George West

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS:
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Franisco, CA 94102
BRANCH NAME: San Francisco Superior Court

CASE NAME:
George West v. Merck & Co., Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter    ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | JUDGE:  DEPT: |

*All five (5) items below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental /Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41).
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

**2.** This case ☐ is ☒ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states or countries, or in a federal court
f. ☐ Substantial post-judgment judicial supervision

**3.** Type of remedies sought *(check all that apply):*
a. ☐ monetary    b. ☐ nonmonetary; declaratory or injunctive relief    c. ☐ punitive

**4.** Number of causes of action *(specify):*

**5.** This case ☐ is ☒ is not a class action suit.

Date: 11/9/07

JOSHUA EZRIN
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2003] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 201.8, 1800–1812; Standards of Judicial Administration, § 19 www.courtinfo.ca.gov |
|---|---|---|

M00E515689

CASE NUMBER: CGC-07-469085  GEORGE WEST VS. MERCK & COMPANY,INC., A CORPO

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

DATE:  **APR-11-2008**

TIME:  **9:00AM**

PLACE:  **Department 212**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**

## Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

M00E5I5692

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

M00E515693

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called <u>judicial arbitration</u>. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through <u>private arbitration</u>. Here, the parties

M00E515694

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### Operation

Pursuant to CCP 1141.11 and Local Rule 4; all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

### Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

### Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

M00E51569S

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

M00E515697

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

M00E515698

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
### 400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**        ☐ **Mediation Services of BASF**     ☐ **Judicial Mediation**
☐ **Binding arbitration**                                          Judge _____
☐ **Non-binding judicial arbitration**                             Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant |  | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06              **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

M00E5157OO

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | | CASE NUMBER: |
|---|---|---|
| **(Check one):**  ☐ **UNLIMITED CASE**<br>(Amount demanded<br>exceeds $25,000) | ☐ **LIMITED CASE**<br>(Amount demanded is $25,000<br>or less) | |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**
Date:                          Time:                  Dept.:              Div.:              Room:
Address of court *(if different from the address above)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action)*:

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

M00E515701

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(if more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request   ☐ a jury trial   ☐ a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
    a.  ☐ The trial has been set for *(date):*
    b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
    a.  ☐ days *(specify number):*
    b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial   ☐ by the attorney or party listed in the caption   ☐ by the following:
    a.  Attorney:
    b.  Firm:
    c.  Address:
    d.  Telephone number:
    e.  Fax number:
    f.  E-mail address:
    g.  Party represented:
    ☐ Additional representation is described in Attachment 8.

9.  **Preference**
    ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a.  Counsel   ☐ has   ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c.  ☐ The case has gone to an ADR process *(indicate status):*

M00E5157X02

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

10. d. The party or parties are willing to participate in *(check all that apply)*:

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify)*:

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

    ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

    a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

    b. Reservation of rights: ☐ Yes ☐ No

    c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

    ☐ Bankruptcy ☐ Other *(specify)*:

    Status:

**14. Related cases, consolidation, and coordination**

    a. ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

        ☐ Additional cases are described in Attachment 14a.

    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

M00E515703

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
    a. ☐ The party or parties have completed all discovery.
    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

    c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**
    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other Issues**
    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**
    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**
    Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached

M00E515704



# Superior Court of California
## County of San Francisco

HON. DAVID BALLATI
PRESIDING JUDGE

### Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR PROGRAM ADMINISTRATOR

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

M00E515705

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
11/16/2007
CT Log Number 512800036

|||||||||||||||||||||||||||||||||||||||||

TO:   Ellen Gregg
      Womble Carlyle Sandridge & Rice, PLLC
      301 North Main Street, Suite 300
      Winston-Salem, NC 27101

RE:   **Process Served in California**

FOR:  Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

TITLE OF ACTION:             George West, Pltf. vs. Merck & Company, Inc., etc., et al., Dfts.
                             Name discrepancy noted.

DOCUMENT(S) SERVED:          Summons, Complaint, Cover Sheet, Attachment(s), Stipulation Form, Case
                             Management Statement Form, Notice to Plaintiff

COURT/AGENCY:                Superior Court, County of San Francisco, CA
                             Case # CGC07469085

NATURE OF ACTION:            Product Liability Litigation - Drug Litigation - Personal Injury - Vioxx

ON WHOM PROCESS WAS SERVED:  C T Corporation System, Los Angeles, CA

DATE AND HOUR OF SERVICE:    By Process Server on 11/16/2007 at 15:10

APPEARANCE OR ANSWER DUE:    Within 30 days after service

ATTORNEY(S) / SENDER(S):     William M. Audet
                             221 Main Street, Ste. 1460
                             San Francisco, CA 94105
                             415-568-2555

ACTION ITEMS:                SOP Papers with Transmittal, via Fed Ex Priority Overnight , 798811534466
                             Email Notification, Debra A Bollwage DEBRA_BOLLWAGE@MERCK.COM
                             Email Notification, Kristin L. Sunderman kristin_sunderman@merck.com

SIGNED:                      C T Corporation System
PER:                         Nancy Flores
ADDRESS:                     818 West Seventh Street
                             Los Angeles, CA 90017
TELEPHONE:                   213-337-4615

```
WCS&R

NOV 1 9 2007

RECEIVED
```

Page 1 of  1 / BF

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

M00E515706

# EXHIBIT "B"

1  Michael K. Brown (SBN 104252)
   Thomas J. Yoo (SBN 175118)
2  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
3  Los Angeles, CA  90071-1514
   Telephone:    213.457.8000
4  Facsimile:    213.457.8080
   Email: mkbrown@reedsmith.com
5  tyoo@reedsmith.com

6  Steven J. Boranian (SBN 174183)
   Alison B. Riddell (SBN 246120)
7  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
8  San Francisco, CA  94111
   Telephone:    415.543.8700
9  Facsimile:    415.391.8269
   Email: sboranian@reedsmith.com
10 ariddell@reedsmith.com

11 Attorneys for Defendant
   Merck & Co., Inc.

12

13               SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                      FOR THE COUNTY OF SAN FRANCISCO

15 GEORGE WEST                          Case No.: CGC-07-469085

16                Plaintiff(s),

17      vs.                             **DEFENDANT MERCK & CO., INC.'S**
                                        **ANSWER TO PLAINTIFF'S UNVERIFIED**
18 MERCK & COMPANY, INC., a             **COMPLAINT AND REQUEST FOR JURY**
   corporation; MCKESSON               **TRIAL**
19 CORPORATION, a corporation; and
   DOES 1 to 100, inclusive,
20
                 Defendants.
21

22

23

24

25

26

27

28

ENDORSED
F I L E D
San Francisco County Superior Court

DEC 1 0 2007

GORDON PARK-LI, Clerk
BY: _____ MICHAEL RAYRAY
                    Deputy Clerk

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## GENERAL DENIAL

1.    Answering plaintiff's unverified Complaint, defendant Merck & Co., Inc., ("answering defendant") generally and specifically denies every allegation of the Complaint, and the whole thereof, and denies that plaintiff was injured or damaged in any sum, or at all, by reason of any act or omission of answering defendant or anyone acting on its behalf.

## AFFIRMATIVE DEFENSES

2.    As a first affirmative defense, answering defendant alleges that the Complaint fails to state facts sufficient to constitute a cause of action against this answering defendant.

3.    As a second affirmative defense, answering defendant alleges that this Court lacks personal jurisdiction over answering defendant.

4.    As a third affirmative defense, answering defendant alleges that California's judicially-created definitions of manufacturing defect and design defect, and standards for determining whether there has been an actionable failure to warn, are unconstitutional in that, among other things, they are void for vagueness and an undue burden on interstate commerce, as well as an impermissible effort to regulate in an area that previously has been preempted by the federal government.

5.    As a fourth affirmative defense, answering defendant alleges that to the extent that plaintiff asserts claims based on answering defendant's alleged adherence or lack of adherence to and compliance with applicable federal laws, regulations, and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

DOCSSFO-12499348.1-ABRIDDEL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

6.    As a fifth affirmative defense, answering defendant alleges that plaintiff may have failed to exercise reasonable care to mitigate plaintiff's alleged damages.

7.    As a sixth affirmative defense, answering defendant alleges that the provisions of California Civil Code Section 1431.2 are applicable to the Complaint and each cause of action therein.

8.    As a seventh affirmative defense, answering defendant alleges that plaintiff's claims are barred in whole or in part by the applicable statutes of limitations, including but not limited to California Code of Civil Procedure Sections 335.1 and 338 and former section 340(3), California Business and Professions Code Section 17208, and California Civil Code Section 1783.

9.    As an eighth affirmative defense, answering defendant alleges that the subject pharmaceutical product manufactured or distributed by answering defendant has at all relevant times been available only upon the prescription of a licensed physician, and plaintiff's prescribing physician(s) stood in the position of the learned intermediaries between answering defendant and plaintiff.  To the extent that plaintiff asserts claims based on an alleged failure by answering defendant to warn plaintiff directly of alleged dangers associated with the use of the subject pharmaceutical product manufactured or distributed by answering defendant, such claims are barred because answering defendant has discharged its duty to warn in its warnings to the prescribing physicians, under the learned intermediary doctrine.

10.    As a ninth affirmative defense, answering defendant alleges that plaintiff's claims are barred in whole or in part because the subject pharmaceutical product manufactured or distributed by answering defendant is a prescription medication which is "unavoidably unsafe" within the meaning of Comment k to Section 402A of the Restatement (Second) of Torts.

DOCSSFO-12499348.1-ABRIDDEL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

11.    As a tenth affirmative defense, answering defendant alleges that plaintiff's claims are barred in whole or in part because answering defendant provided adequate "direction or warnings" as to the use of the subject pharmaceutical product manufactured or distributed by answering defendant within the meaning of Comment j to Section 402A of the Restatement (Second) of Torts.

12.    As an eleventh affirmative defense, answering defendant alleges that plaintiff's claims are barred in whole or in part because the subject pharmaceutical product manufactured or distributed by answering defendant "provides net benefits for a class of patients" within the meaning of Comment f to Section 6 of the Restatement (Third) of Torts: Products Liability.

13.    As  a twelfth affirmative defense, answering defendant alleges that the subject pharmaceutical product manufactured or distributed by answering defendant, and the design, manufacture, and promotion thereof, conformed to the state-of-the-art for the design, manufacture, and promotion of such, or similar products based on available medical and scientific knowledge.

14.    As a thirteenth affirmative defense, answering defendant alleges that plaintiff's claims are barred in whole or in part under the applicable state law because subject pharmaceutical product manufactured or distributed by answering defendant was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

15.    As a fourteenth affirmative defense, answering defendant alleges that plaintiff's claims are barred in whole or in part by the deference given to the primary jurisdiction of the Food and Drug Administration over the subject pharmaceutical product manufactured or distributed by answering defendant under applicable federal laws, regulations, and rules.

16.    As a fifteenth affirmative defense, answering defendant alleges that the subject pharmaceutical product manufactured or distributed by answering defendant complied with the applicable laws, regulations, and rules promulgated and enforced by the Food and Drug

- 3 -

1   Administration.  Compliance with such laws, regulations, and rules demonstrates that due care and

2   reasonable prudence were exercised in the design, manufacture, and promotion of the subject

3   pharmaceutical product and that the subject pharmaceutical product was not defective in any respect.

4

5       17.     As a sixteenth affirmative defense to each cause of action in the Complaint,

6   answering defendant alleges that plaintiff's claims are barred in whole or in part because there is no

7   private right of action concerning matters regulated by the Food and Drug Administration under

8   applicable federal laws, regulations, and rules.

9

10      18.     As a seventeenth affirmative defense, answering defendant alleges that if plaintiff has

11  sustained injury or loss as alleged in the Complaint, such injury or loss was only so sustained after

12  plaintiff knowingly and voluntarily assumed the risk of any injury as the result of the consumption

13  of, administration of, or exposure to any drug or pharmaceutical preparation manufactured or

14  distributed by answering defendant and prescribed by the plaintiff's physicians.

15

16      19.     As an eighteenth affirmative defense, answering defendant alleges that if plaintiff has

17  sustained injury or loss as alleged in the Complaint, such injury or loss may have been directly and

18  proximately caused by the operation of nature or the intervening or superseding acts of persons not

19  having real or apparent authority to take said actions on behalf of answering defendant, over whom

20  answering defendant had no control, and/or for whom answering defendant may not be held

21  accountable.

22

23      20.     As a nineteenth affirmative defense, answering defendant alleges that plaintiff may

24  have been careless and negligent in the matters alleged, thereby causing and contributing to any

25  alleged injury, damage, or loss to plaintiff.

26

27      21.     As a twentieth affirmative defense, answering defendant alleges that if plaintiff has

28  sustained injury or loss as alleged in the Complaint, such injury or loss may have been caused by

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 4 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  parties other than answering defendant, or third persons not parties to this action, who may have

2  been negligent, legally responsible, or otherwise at fault.  In the event of a finding of liability in

3  favor of plaintiff, a settlement, or a judgment against answering defendant, answering defendant

4  requests an apportionment of fault among all parties and third persons as permitted by *Li v. Yellow*

5  *Cab Company and America Motorcycle Association v. Superior Court.*  Answering defendant also

6  requests a judgment and declaration of partial indemnification and contribution against all other

7  parties or third persons in accordance with the apportionment of fault.

8

9       22.    As a twenty-first affirmative defense, answering defendant alleges that if plaintiff has

10  sustained injury or loss as alleged in the Complaint, such injury or loss resulted from pre-existing

11  and/or unrelated medical, genetic, and/or environmental conditions, diseases or illnesses, subsequent

12  medical conditions, idiosyncratic reactions, or natural course of conditions for which answering

13  defendant is not responsible.

14

15       23.    As a twenty-second affirmative defense, answering defendant alleges that plaintiff's

16  claims are barred under Section 4, et seq., of the Restatement (Third) of Torts: Products Liability.

17

18       24.    As a twenty-third affirmative defense, answering defendant alleges that if plaintiff has

19  sustained injury or loss as alleged in the Complaint, such injury or loss may have been proximately

20  caused by plaintiff's misuse or abuse of subject pharmaceutical product manufactured or distributed

21  by answering defendant.

22

23       25.    As a twenty-fourth affirmative defense, answering defendant alleges that plaintiff's

24  claims are barred in whole or in part by the First Amendment of the United States Constitution and

25  similar provisions in the Constitution of the State of California which protect, among other things,

26  answering defendant's right to promote and advertise the subject pharmaceutical product.

27

28

DOCSSFO-12499348.1-ABRIDDEL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1      26.    As a twenty-fifth affirmative defense, answering defendant alleges that to the extent

2  that plaintiff relies upon any theory of breach of warranty, plaintiff did not rely on such warranties

3  and the claims are otherwise barred for lack of timely notice, for lack of privity, and/or because the

4  alleged warranties were disclaimed.

5

6      27.    As a twenty-sixth affirmative defense, answering defendant alleges that plaintiff's

7  claims are barred in whole or in part by the doctrines of accord and satisfaction, good faith, consent,

8  res judicata, payment and release, waiver, collateral estoppel, judicial estoppel, equitable estoppel,

9  unclean hands, and/or laches.

10

11      28.    As a twenty-seventh affirmative defense, answering defendant alleges that plaintiff's

12  claims are barred in whole or in part because all acts or omissions by answering defendant (or its

13  agent or representative) were privileged or justified and any claim based thereon is barred.

14

15      29.    As a twenty-eighth affirmative defense, answering defendant alleges that plaintiff's

16  claims are barred in whole or in part because plaintiff lacks standing to bring such claims.

17

18      30.    As a twenty-ninth affirmative defense, answering defendant alleges that plaintiff's

19  claims are barred in whole or in part because the Complaint fails to join necessary and indispensable

20  parties.

21

22      31.    As a thirtieth affirmative defense, answering defendant alleges that plaintiff's claims

23  are barred in whole or in part because they have been improperly joined in this action.

24

25      32.    As a thirty-first affirmative defense, answering defendant alleges that plaintiff's

26  claims are barred in whole or in part because they have been filed in an improper venue.

27

28

DOCSSFO-12499348.1-ABRIDDEL

Defendant Merck & Co., Inc.'s Answer To Plaintiff's Unverified Complaint And Request For Jury Trial

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

33. As a thirty-second affirmative defense, answering defendant alleges that to the extent plaintiff is seeking recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action.

34. As a thirty-third affirmative defense, answering defendant alleges that plaintiff's claims are barred, in whole or in part, because they fail to meet the requirements of Code of Civil Procedure Sections 377.30, et seq., and 377.60, et seq.

35. As a thirty-fourth affirmative defense, answering defendant alleges that to the extent that plaintiff seeks punitive damages for the conduct which allegedly caused injuries asserted in the Complaint, punitive damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, the Full Faith and Credit Clause of the United States Constitution, and applicable provisions of the Constitution of the State of California. Any law, statute, or other authority purporting to permit the recovery of punitive damages in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and/or the amount, if any; (2) is void for vagueness in that it failed to provide adequate advance notice as to what conduct will result in punitive damages; (3) unconstitutionally may permit recovery of punitive damages based on out-of-state conduct, conduct that complied with applicable law, or conduct that was not directed, or did not proximately cause harm, to plaintiff; (4) unconstitutionally may permit recovery of punitive damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to plaintiff and to the amount of compensatory damages, if any; (5) unconstitutionally may permit jury consideration of net worth or other financial information relating to answering defendant; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any punitive damages award; (7) lacks constitutionally sufficient standards for appellate review of punitive damages awards; and (8)

- 7 -

DOCSSFO-12499348.1-ABRIDDEL

1    otherwise fails to satisfy Supreme Court precedent, including, without limitation, *Pacific Mutual Life*

2    *Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032 (1991); *TXO Production Corp. v. Alliance Resources,*

3    *Inc.*, 509 U.S. 443, 113 S.Ct. 2711 (1993); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116

4    S.Ct. 1589 (1996); and *State Farm Ins. Co. v. Campbell*, 123 S.Ct. 1513 (2003).

5

6    36.    As a thirty-fifth affirmative defense, answering defendant alleges that to the extent

7    that plaintiff seeks punitive damages for an alleged act or omission of answering defendant, no act or

8    omission was oppressive, fraudulent, or malicious, under California Civil Code Section 3294, and

9    therefore, any award of punitive damages is barred.  Any claim for punitive damages is also barred

10    under California Civil Code Section 3294(b).

11

12    37.    As a thirty-sixth affirmative defense, answering defendant alleges that plaintiff's

13    claims under Business and Professions Code Sections 17200, et seq. and 17500, et seq. are barred in

14    whole or in part because answering defendant's conduct and all activities with respect to the subject

15    pharmaceutical product manufactured or distributed by answering defendant were lawful, fair,

16    truthful, not misleading or deceptive, and were justified based on the state of medical and scientific

17    knowledge available during the relevant time period.

18

19    38.    As a thirty-seventh affirmative defense, answering defendant alleges that plaintiff's

20    claims under Business and Professions Code Sections 17200, et seq. and 17500, et seq. are barred in

21    whole or in part because all of answering defendant's activities as alleged in the Complaint were in

22    compliance with the applicable laws, regulations, and rules, and thus cannot be deemed unlawful,

23    unfair, fraudulent, deceptive, untrue, or misleading.

24

25    39.    As a thirty-eighth affirmative defense, answering defendant alleges that plaintiff's

26    claims under Business and Professions Code Sections 17200, et seq. and 17500, et seq. are barred in

27    whole or in part because plaintiff does not qualify as a private attorney general, and for that reason

28    and others, plaintiff lacks standing to prosecute a claim for injunctive or monetary relief.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSSFO-12499348.1-ABRIDDEL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

40.     As a thirty-ninth, answering defendant alleges that plaintiff's claims under Business and Professions Code Sections 17200, et seq. and 17500, et seq. are barred in whole or in part because there is no basis for injunctive relief in this action.

41.     As a fortieth affirmative defense, answering defendant alleges that plaintiff's claims under Business and Professions Code Sections 17200, et seq. and 17500 et seq. are barred in whole or in part by the doctrine of primary jurisdiction in that the subject pharmaceutical product manufactured or distributed by answering defendant and any advertisement regarding such product are regulated by the Food and Drug Administration and as such, answering defendant requests that this court, sitting in equity, abstain from hearing claims under Sections 17200 et seq. and 17500 et seq.

42.     As a forty-first affirmative defense, answering defendant alleges that plaintiff is not entitled to relief under Business and Professions Code Sections 17200, et seq. and 17500 et seq. because plaintiff has an adequate remedy at law.

43.     As a forty-second affirmative defense answering defendant alleges that plaintiff's claims under Business and Professions Code Sections 17200, et seq. and 17500 et seq. are barred in whole or in part under principles of substantive and procedural due process.

44.     As a forty-third affirmative defense, answering defendant alleges that to the extent plaintiff seeks restitution on behalf of individuals who used the subject pharmaceutical product manufactured or distributed by answering defendant and suffered no damage or loss as a result thereof, restitution is unavailable as nothing has been taken from those individuals, who allegedly could have an equitable basis for restitution.

45.     As a forty-fourth affirmative defense, answering defendant alleges that to the extent plaintiff seeks restitution for products previously used, such claims are barred in whole or in part

DOCSSFO-12499348.1-ABRIDDEL

1    because plaintiff received benefits from the subject pharmaceutical product manufactured or

2    distributed by answering defendant and nothing was wrongfully taken from such plaintiff.

3

4        46.    As a forty-fifth affirmative defense, answering defendant alleges that plaintiff's

5    claims of deceit by concealment and negligent misrepresentation are barred by reason of plaintiff's

6    failure to allege the circumstances constituting the alleged deceit and misrepresentation with

7    particularity.

8

9        47.    As a forty-sixth affirmative defense, answering defendant alleges that answering

10   defendant intends to rely upon such other affirmative defenses as may become available or apparent

11   during the course of investigation, discovery, or trial, and answering defendant reserves the right to

12   amend this Answer to assert such other defenses to which it may be entitled

13

14       WHEREFORE, answering defendant requests:

15

16       1.     That plaintiff takes nothing by the Complaint;

17

18       2.     A dismissal of the Complaint with prejudice and an award of answering defendant's

19   reasonable attorneys' fees to the extent permitted by law;

20

21       3.     Judgment in favor of answering defendant and against plaintiff;

22

23       4.     Costs of suit herein; and

24

25       5.     Such other and further relief that the Court may deem just and proper.

26

27

28

DOCSSFO-12499348.1-ABRIDDEL

Defendant Merck & Co., Inc.'s Answer To Plaintiff's Unverified Complaint And Request For Jury Trial

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

## REQUEST FOR JURY TRIAL

2

3    Answering defendant respectfully requests a jury trial on those claims to which it is entitled

4    to a jury trial.

5

6    DATED:  December 10, 2007.

7                                            REED SMITH LLP

8    By _____

9                                            Alison B. Riddell
                                             Attorneys for Defendant
10                                           Merck & Co., Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- 11 -

DOCSSFO-12499348.1-ABRIDDEL

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, Two Embarcadero Center, Suite 2000, San Francisco, CA  94111-3922. On December 10, 2007, I served the following document(s) by the method indicated below:

**DEFENDANT MERCK & CO., INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT AND REQUEST FOR JURY TRIAL**

☒ by transmitting via facsimile on this date from fax number +1 415 391 8269 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM  and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service.

☐ by transmitting via email to the parties at the email addresses listed below:

William M. Audet
Susanne N. Scovern
Joshua C. Ezrin
**AUDET & PARTNERS, LLP**
221 Main Street, Suite 1460
San Francisco, CA  94105
Facsimile No. (415) 568-2556

DOCSSFO-12500953.1

1          I declare under penalty of perjury under the laws of the State of California that the

2    above is true and correct.  Executed on December 10, 2007, at San Francisco, California.

3

4                                              D. Rothschild

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCSSFO-12500953.1

REED SMITH LLP

A limited liability partnership formed in the State of Delaware